■ In the Matter of ALEXANDER GLIKLAD, Respondent, v MICHAEL CHERNOI, Also Known as MICHAEL CHERNEY, et al., Appellants. [12 NYS3d 65]—

Order, Supreme Court, New York County (Melvin L. Schweitzer, J.), entered on or about October 10, 2014, which, in this special proceeding pursuant to CPLR 5225 (b), granted the petition to compel respondents-appellants (respondents) to turnover respondent Cherney's ownership interest in respondent ERIP and all of respondents' assets and debts in order to satisfy a judgment in favor of petitioner, unanimously affirmed, without costs.

In April 2014, petitioner obtained a $505 million judgment against respondent Michael Cherney. In June 2014, petitioner commenced the instant proceeding, seeking to compel the turnover of Cherney's interest in respondent ERIP LLC (ERIP), as well as all assets owned by ERIP, all debts owed by ERIP to Cherney, and all debts owed to ERIP.

Petitioner alleges that Cherney is the "100% beneficial

owner" of ERIP, based on statements made by Cherney and others in depositions, affidavits, and other court filings in both the action underlying the turnover proceeding (underlying action) and unrelated actions. The record supports petitioner's assertion that, in 2005, Cherney, either personally or through his ownership interest in Orsit International Ltd., invested $100 million in ERIP for the purpose of ERIP investing that money in a hedge fund called EagleRock Capital Management, LLC (EagleRock). For example, in a 2011 deposition in an unrelated action brought by ERIP against EagleRock (EagleRock action), Cherney referred several times to ERIP's $100 million investment in EagleRock as "my money." In the same deposition, he stated, "I am the principal investor" in EagleRock. ERIP's complaint in the EagleRock action stated that ERIP was formed and funded "by a successful industrialist who lives abroad" for the purpose of investing in EagleRock. In a June 2010 deposition in the underlying action, Cherney explained that the EagleRock investment was structured so that, before profits could be distributed to his business associate and his two daughters, the $100 million principal, plus interest, was to be returned to him. In his brief to this Court in the underlying action, Cherney stated that, in 2005, he "provided $100 million" to fund ERIP's investment in EagleRock.

In opposition to the turnover petition, Cherney argued that he is not, and has "never been the beneficial owner of ERIP or any of its assets." He stated that, in 2004, he decided to give his daughters, Rina and Diana, $100 million. He transferred ownership and control of Dulli Foundation (Dulli), a Liechtenstein-based trust, to his daughters, and transferred $100 million to Dulli. In 2005, he encouraged Rina and Diana to invest Dulli's $100 million in ERIP. In opposition to the petition here, Cherney stated that he did not play any role in the formation of ERIP. Cherney also submitted a purportedly "newly-discovered" agreement dated March 2007, in which Cherney transferred his ownership of Orsit to his daughters. He stated that the agreement was located in 2013, and had been locked in the Cypriot office of a deceased man who provided advisory and consulting services to the Cherney family. Notably, a 2009 tax form shows that Orsit owned 100% of ERIP.

Rina Chernaya submitted an affidavit in opposition to the turnover petition, stating that she and Diana own 100% of the beneficial interest of ERIP. She further stated that, to the extent Cherney had, in the past, claimed a right to a return of the $100 million investment, he was incorrect. In addition,

Rina stated that ERIP was formed in 2005 to facilitate Dulli's investment in EagleRock, that Orsit was a member of ERIP at its formation, and that she and her sister owned Orsit, and executed the 2007 agreement transferring Orsit from Cherney to "clarif[y]" that she, Diana, and Dulli owned Orsit.

The motion court, which was quite familiar with this drawn-out dispute, granted the petition, stating that "[t]his turnover proceeding is the latest proceeding in litigation fraught with questionable behavior by Mr. Cherney." After reviewing Cherney's past depositions and affidavit, as well as the submissions in opposition to the turnover petition, the court concluded that the 2007 agreement "and surrounding tale raises nothing but 'feigned' issues of fact." The court found that Cherney had an interest in ERIP, and held that "all the assets Mr. Cherney holds in ERIP, and all debts owed to ERIP are subject to turnover." Additionally, the court held that "all the assets of ERIP, including its holdings of stock, and all debts owed by ERIP to Mr. Cherney, and any party to ERIP should be turned over to [petitioner]."

The motion court properly relied on Cherney's numerous sworn statements in the EagleRock action and the action underlying the judgment, all of which support the conclusion that Cherney invested $100 million in ERIP at its formation in 2005. We concur with the motion court's assessment that Cherney's story about the discovery of the 2007 agreement purporting to transfer his interest in Orsit (which, as of 2009, had a 100% interest in ERIP) to his daughters was highly dubious, and that no hearing was necessary on this issue. The 2007 document, which was produced for the first time in opposition to the turnover petition, predated the EagleRock action and the action that resulted in the $505 million judgment, and Cherney provides no explanation for why he did not raise the existence of the "agreement" in those actions. Nor does he explain why, in a 2011 deposition, he referred to the $100 million as his money if, as he now says, this was his daughters' investment. Thus, we agree with the motion court that Cherney raised a "feigned issue of fact" (*see e.g. Schwartz v JPMorgan Chase Bank, N.A.*, 84 AD3d 575, 577 [1st Dept 2011]).

Although ERIP claims that Cherney's daughters ran the business, for the reasons set forth above, the motion court properly rejected those claims. ERIP offered no facts to establish that anyone else unconnected to Cherney or his family has a current role or current ownership interest in ERIP that would require a hearing in this case.

We have considered respondents' remaining arguments and

find them unavailing. Concur—Acosta, J.P., Saxe, Moskowitz, Richter and Feinman, JJ.